HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRINA LYONS,

   Plaintiff,

 v.

WASHINGTON STATE
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

   Defendant.

CASE NO. 3:18-cv-05874-RBL

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

DKT. # 17

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Washington State Department of Social and Health Services' Motion for Summary Judgment. Plaintiff Trina Lyons, an African American woman, applied for a position as a social services investigator at DSHS but was ultimately denied due to a past conviction for theft in the first degree, which had been expunged. She has now sued the agency for disparate impact under Title VII of the Civil Rights Act and the Washington Law Against Discrimination, as well as for breach of contract, promissory estoppel, and negligence. DSHS moves for summary judgment, arguing that the Eleventh Amendment bars Lyons's state law claims and that her Title VII claim fails on the merits. For the following reasons, the Court GRANTS DSHS's Motion for Summary Judgment.

## BACKGROUND

Lyons is an African-American woman. In September of 2016, Lyons applied for a position at DSHS's Adult Protective Services Division as a Social Services Specialist III/Investigator. The position is described as follows:

> Within the Department of Social and Health Services (DSHS), Aging and Disability Services Administration, this position provides services to the over age 18 vulnerable adult populations. This position functions independently and investigates reports of abandonment, abuse, financial exploitation, neglect, and self-neglect of vulnerable adults. This position conducts objective, timely and thorough investigations; assists vulnerable adults to access appropriate services as provided by the rules and regulations, policy guidelines and client consent; networking and coordinating with others to serve vulnerable adults and educating vulnerable adults and the community about abuse, neglect, self-neglect, abandonment, exploitation and protective services.

Dkt. # 21 at 1-2. DSHS categorizes this as a "department covered position" because of the unsupervised access to vulnerable adults, juveniles, and children that it entails. Dkt. # 20, Ex. 1, at 05000002. All applicants for department covered positions are subject to a background check and character, competency, and suitability review.

After she interviewed, DSHS extended an offer of employment to Lyons that was conditioned on her passing the background check process. To conduct background checks, DSHS compiles documents from various reporting agencies. Lyons's background check uncovered that she had been convicted of theft in the first degree for welfare fraud in 1988. When asked for an explanation, Lyons informed DSHS that she "made a decision out of desperation" and had since had the conviction expunged. Dkt. # 21, Ex. 4. Despite this, the hiring authority at DSHS found Lyons's admission made her "unsuitable for the position, regardless of whether the crime was officially expunged from her record," and rescinded the offer. Dkt. # 20 at 2-3. According to the hiring authority, "If Ms. Lyons were to become desperate again, it would be very easy for her to harm the same people that [DSHS is] required to protect." *Id*. at 3.

**DISCUSSION**

**1.      Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**2.     Eleventh Amendment**

DSHS argues that Lyons's state law claims must be dismissed because of DSHS's Eleventh Amendment immunity to state law claims in federal court. Lyons concedes that her state law claims cannot be adjudicated by this Court.

The Eleventh Amendment generally gives states and state agencies the power to assert sovereign immunity in federal court as a bar to claims for money damages brought against them by private parties. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). A federal court may entertain a suit against a state only if: (1) the state has waived its Eleventh Amendment immunity, *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 778-79 (1991); (2) Congress has abrogated states' immunity, *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989); or (3) the United States is the plaintiff, *United States v. Mississippi*, 380 U.S. 128, 140 (1965). In addition, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), a claim for prospective injunctive relief against a state official for an alleged ongoing violation of federal law can proceed in federal court. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).

Here, none of these exceptions are satisfied for Lyons's state law claims. Lyons filed suit in federal court so DSHS did not waive its immunity by removing the case. Congress has not abrogated state immunity for any of Lyons's state law claims and Lyons seeks money damages, not injunctive relief. Consequently, Lyons's claims for disparate treatment under WLAD, breach of contract, promissory estoppel, and negligence are dismissed.

**2.     Title VII**

This means that Lyons's only viable claim is for disparate treatment under Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e-2. Lyons argues that DSHS has a policy of denying

employment/promotion to applicants with certain criminal convictions in their past, and that this policy disparately impacts African Americans because they are statistically more likely to have such a conviction than white applicants. DSHS contends that the policy Lyons has identified is overbroad, but even assuming DSHS has the policy Lyons has described there is no evidence showing that it has caused a disparate impact on African Americans. DSHS further argues that, because the position Lyons had applied for involved unsupervised access to vulnerable adults, DSHS's policy is a business necessity.

To establish a prima facie case of disparate impact under Title VII, the plaintiff must prove a prima facie case "that a facially neutral employment practice has a 'significantly discriminatory' impact upon a group protected by Title VII." *Paige v. California*, 291 F.3d 1141, 1144 (9th Cir. 2002) (quoting *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 481 (9th Cir.1983)). "When a motion for summary judgment is involved, a prima facie case refers to the plaintiff's burden of 'producing enough evidence to permit the trier of fact to infer the fact at issue.'" *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7 (1981)).

Thus, the plaintiff first has the burden of "identifying the specific employment practice that is challenged." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988). Then, the plaintiff must establish causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id*. "A prima facie case of disparate impact is 'usually accomplished by statistical evidence showing that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.'" *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) (citing *Wards*

*Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989) (internal quotation omitted)). This necessitates comparing the group of individuals that applied for a position with the group that ultimately received offers. *Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002).

If the plaintiff meets its burden of establishing a prima facie case, the burden shifts to the defendant to demonstrate that its policy is justified by a "business necessity." *Watson*, 487 U.S. at 997. The defendant must show that the challenged employment policy "bear[s] a demonstrable relationship to successful performance of the jobs for which it was used." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). The Ninth Circuit has described this standard as follows: "an employer must demonstrate a significant relation between the challenged selection device or criteria and the important elements of the job or training program, not merely some 'rational basis' for the challenged practice. However, the employer need not establish a perfect positive correlation between the selection criteria and the important elements of work." *Contreras v. City of Los Angeles*, 656 F.2d 1267, 1276 (9th Cir. 1981) (internal quotation omitted) (quoting *Craig v. County of Los Angeles*, 626 F.2d 659, 664 (9th Cir. 1980)).

Here, Lyons has done a poor job of isolating the DSHS policy at issue, but the evidence submitted by the agency itself confirms that the policy vaguely described by Lyons does exist. When DSHS performs background checks on applicants for positions involving unsupervised access to vulnerable individuals, certain convictions lead to automatic disqualification, while others only disqualify the applicant if the conviction is less than five years old. *See* DSHS Guidelines for Conducting Employee Background Checks, Dkt. # 20, Ex. 1, at 05000042 (Appendix A). Otherwise, "an overall assessment of the person's character, competence, and suitability to have unsupervised access will determine denial." *Id*. The policy says nothing about expungement. Theft is included in the list, but it only disqualifies an applicant automatically if

the conviction is within five years, which casts doubt on whether Lyons's rejection was consistent with the policy. *Id*. at 05000043. Nonetheless, DSHS's general policy of disqualifying applicants based on certain criminal convictions is sufficient to get Lyons past the first hurdle in proving a prima facie case.

She cannot, however, get over the second. To show that DSHS's policy has a disparate impact, Lyons relies entirely on generalized statistics about the higher rate of conviction for African Americans at the national and state level as evidence that DSHS's policy has a disparate impact on African Americans. *See* EEOC Guidance, Dkt. # 23-1; Census data on Washington State, Dkt. # 23-2. While this suggests some *likely* negative ramifications of DSHS's policy, "[i]t is not sufficient to present evidence raising an inference of discrimination on a disparate impact claim." *Stout*, 276 F.3d at 1122. "The plaintiff 'must actually prove the discriminatory impact at issue.'" *Id*. (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). Lyons presents no evidence whatsoever that DSHS's policy has *actually* had a disparate impact on African American applicants for the position Lyons applied for or any other position at DSHS. Indeed, it appears that Lyons propounded no discovery in this case, and the cutoff has now passed. It would thus be impossible for a trier of fact to find in Lyons's favor based on anything other than conjecture. Even when conjecture seems reasonable, it is insufficient when other evidence could well show that DSHS's policy does not, in fact, disproportionately impact African American applicants.

This is all the more true because of the policy at issue and the evidence offered by Lyons. Although DSHS's policy includes a wide range of offenses, it is not exhaustive, and the types of convictions that disqualify applicants regardless of when they occurred are mostly violent or sexual in nature. Dkt. # 20, Ex. 1, at 05000042-43 (Appendix A). Even if conviction rates are

higher for African Americans in general, it is unclear what the statistics are for these particular offenses and what difference the date-of-conviction distinction makes. The only Washington-specific evidence offered by Lyons is a PowerPoint slideshow with statistics from 2007 and 2010 that was apparently prepared by University of Washington Sociology Professor Alexes Harris. Dkt. # 20, Ex. 2, at 16-17. DSHS argues that the Court cannot take judicial notice of this evidence, but even if it did, this data is out of date and too broad to draw meaningful conclusions about the impact of DSHS's policy.

Lyons argues that the Court must defer to the EEOC's *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, which provides that the disproportionately high rate of incarceration of African Americans "supports a finding that criminal record exclusions have a disparate impact based on race and national origin." Dkt. # 23-1. *See Guerrero v. Cal. Dep't. of Corr. & Rehab.*, 119 F.Supp.3d 1065, 1079 (C.D. Cal., 2015) (citing *Contreras v. Los Angeles*, 656 F.2d 1267, 1281 (9th Cir. 1981)). But, as DSHS correctly points out, deference to EEOC guidance does not replace the need for specific evidence for a prima facie case of disparate impact. In *Guerrero*, although the court deferred to EEOC guidance with respect to business necessity, it did not do so for the initial showing of disparate impact. *Id*. at 1077, 1079. For that, the court relied on the plaintiff's evidence comparing the expected impact of the employer's screening question on Latino applicants with its actual impact. *Id*. at 1077.

Lyons presents no cases holding that a policy of disqualifying applicants based on criminal record is *per se* discriminatory such that no employer-specific data at all is needed. *See El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 245 n.14 (3d Cir. 2007) (declining to go so far as to hold that "bright-line policies in the criminal conviction context are *per se*

invalid"). Indeed, in cases where disqualification based on criminal history was at issue, courts have still required *some* data relevant to the defendant employer. In *Green v. Missouri Pacific R. Co.*, for example, the trial court held that the defendant's policy had a disparate impact because "174 blacks (5.3 percent of the black applicants) and 118 whites (2.23 percent of the white applicants) were rejected because of their conviction records." 523 F.2d 1290, 1294 (8th Cir. 1975); *see also Guerrero*, 119 F.Supp.3d at 1077 (see previous paragraph); *El v. Se. PA Transp. Auth.*, 418 F. Supp. 2d 659, 668 (E.D. Pa. 2005) (expert reviewed employer's personnel records in relation to national statistics). Lyons offers no such evidence.

The Court is sympathetic to Lyons's claim in theory, and perhaps with some basic discovery she may have advanced past summary judgment. However, the Court cannot ignore that there is currently insufficient evidence for a trier of fact to conclude that DSHS's policy has had a disparate impact on African American applicants. Lyons's claims therefore must be dismissed.

**CONCLUSION**

For the above reasons, the Court GRANTS DSHS's Motion for Summary Judgment. Lyons's claims are DISMISSED with prejudice. All other pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated this 19th day of February, 2020.

Ronald B. Leighton
United States District Judge